NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GLENN E. THOMPSON,** | 03-CV-5006 (WJM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **JO ANNE B. BARNHART,** **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

Michael Catalano, Esq.
Binder and Binder, P.C.
215 Park Avenue South, 6th Floor
New York, NY 10003
*Attorneys for Plaintiff*

Christopher J. Christie, U.S. Attorney
Susan Reiss, Special Asst. U.S. Attorney
c/o Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
*Attorneys for Defendant*

**MARTINI, U.S.D.J.:**

      **I.**      **INTRODUCTION**

Plaintiff Glenn E. Thompson brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the final determination by the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits. Plaintiff filed an application for such benefits on July 27, 2001. (Tr. at 87-100.) The

application was denied initially and again on reconsideration. (*Id*. at 61-63, 68-69.)  In a written opinion issued September 18, 2002, Administrative Law Judge Timothy C. Pace (hereinafter "the ALJ") concluded that Plaintiff was not entitled to benefits because he did not qualify as "disabled" within the meaning of the Social Security Act. (*Id*. at 14-20.)  Upon the Appeals Council's denial of Plaintiff's request for review on August 22, 2003 (*id*. at 4-6), the ALJ's decision became final.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Glenn E. Thompson was born on January 15, 1951 and is currently fifty-four years old. (Tr. at 94, 97.)  He graduated from high school in 1970 and completed plumbing school in June 1977, but did not obtain a license. (*Id*. at 30, 94.)  Until the onset of his alleged disability on July 13, 2001, Plaintiff was employed as a union plumber. (*Id*. at 29, 88.)

Plaintiff testified that during his childhood, he underwent three surgeries on each eye to correct congenital cataracts. (*Id*. at 42.)  Plaintiff later underwent three surgeries to repair retinal detachment in his left eye on February 3, 2000, May 23, 2000, and September 7, 2000. (*Id*. at 231, 223, 217.)  On October 20, 2000, Plaintiff received corneal transplant surgery in his left eye at the Virginia Department of Rehabilitative Services.  Initially, Plaintiff's recovery was excellent with good corneal healing and clarity; however, Plaintiff presented complaints of pain in his left eye in June 2001, for which he underwent various treatments to achieve and rescue corneal clarity. (*Id*. at 172-173.)  According to a consultative report dated October 9, 2001 by Dr. Martin J. Fox, M.D., a doctor at the Rehabilitative Services, Plaintiff is now blind in his left eye and his visual acuity consists of finger-counting at several feet. (*Id*. at 172-173.)  Dr. Fox

further noted that Plaintiff's left eye is chronically irritated, and in his opinion, Plaintiff's visual disability and chronic irritation make it difficult and "frankly dangerous" for him to perform his work as a plumber. (*Id*. at 173.) Dr. Fox recommended that Plaintiff's disability claim be processed without delay. (*Id*.)

Plaintiff was treated at Omni Eye Services following his corneal transplant surgery. A report dated November 14, 2001 noted that Plaintiff exhibited a hazy cornea in his left eye and a fixed irregular pupil in his right eye. (*Id*. at 188.) According to this report, Plaintiff's right eye had suffered from blurriness, burning, and tearing, which were more prominent when concentrating on a task such as watching television or reading, since July 2001. (*Id*.) Another report dated December 16, 2002 noted Plaintiff's complaints of extreme photosensitivity to bright lights and difficulty focusing with his right eye. (*Id*. at 204.)

At the hearing, the ALJ heard testimony from Plaintiff and his wife, Corlis Thompson. Plaintiff testified that his right eye experiences blurred vision after thirty to sixty minutes of focusing on a task and takes forty-five minutes to recover, six to eight times per day on average. (*Id*. at 37.) He also testified that he sometimes drives to the corner store and back (*id*. at 40), but experiences a burning sensation when he tries to read. (*Id*. at 41.) He further testified that doctors have told him there is a 25% chance that the retina in his right eye will detach. (*Id*. at 43.) Plaintiff's wife testified that she reads Plaintiff's mail to him and pays the bills. She further testified, however, that he can dress himself, wash dishes, go up and down stairs, and fix meals, although he requires intermittent breaks to lie down when he encounters difficulties. (*Id*. at 47.)

The ALJ also heard testimony from vocational expert Andrew V. Beale, during which the ALJ posed two hypothetical scenarios. Initially, he asked which jobs could be performed by a

person of Plaintiff's age, education, and past work experience, who is capable of light to medium exertion but who shares Plaintiff's non-exertional limitations, including an inability to perform work requiring visual acuity. (*Id*. at 48-49.) The vocational expert replied that such an individual could perform jobs as a light office cleaner, laundry sorter or classifier, or hand packer, and that such jobs exist in both the national and local economy. (*Id*. at 49.) He further testified that such jobs would require less visual acuity than would a movie ticket collector or usher, but they would require ambulation and the ability to focus. (*Id*. at 51.) In the second hypothetical scenario, the ALJ asked which jobs could be performed by someone with Plaintiff's alleged symptoms. The vocational expert replied that such limitations would effectively eliminate work, since they would prevent the individual from staying on task throughout an eight-hour day. (*Id*. at 50-51.)

      The ALJ considered the evidence and determined that Plaintiff's residual functional capacity permits him to perform sedentary through heavy work exertionally, but he is limited nonexertionally in that he cannot perform work requiring visual acuity, writing, or money handling, as well as work involving hazards such as heights, moving machinery, or dangerous machinery. (*Id*. at 17, 19.) Furthermore, he must work in a well lit area indoors, but he cannot be exposed to overly bright lights and cannot climb steps. (*Id.*) Accordingly, the ALJ determined that Plaintiff could not pursue his prior plumbing profession. (*Id*. at 17-18.)

      Relying on the testimony of the vocational expert, however, the ALJ determined that Plaintiff could perform work as a "cleaner/janitor" (there being 11,000 such positions regionally, 430,000 nationally), "laundry sorter" (1,600 regionally, 73,000 nationally), or "packer" (4300 regionally, 204,000 nationally). (*Id*. at 18.) In doing so, the ALJ discounted the credibility of

Plaintiff's testimony regarding the severity of his symptoms and the extent of his disability, finding his testimony inconsistent with written statements he had made to the Commissioner. (*Id*. at 16.)  In this documentation, Plaintiff indicated that he performs household cleaning, cooking, laundry, shopping, and some driving, and that he attends church and sometimes socializes with friends and family.  (*Id.*)  The ALJ did not discuss or assess the credibility of Plaintiff's wife's testimony.

On appeal, Plaintiff presents three arguments: (1) the ALJ failed to consider and indicate the weight of relevant evidence properly; (2) the ALJ's determination as to the jobs that Plaintiff could perform was not in accordance with proper legal standards; and (3) the ALJ improperly evaluated Plaintiff's subjective complaints.

### III.     STANDARD OF REVIEW

The District Court exercises plenary review over the Commissioner's legal conclusions and is bound by the Commissioner's factual findings if they are supported by substantial evidence.  *See Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

Thus, this Court's inquiry is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner.  *See*

*Pierce*, 487 U.S. at 565.  If the Court finds the ALJ's decision is supported by substantial evidence, the Court must affirm the ALJ's findings.  *See Sykes*, 228 F.3d at 262.

### IV.    DISCUSSION

An ALJ considering a claim for disability benefits must apply a five-step sequential evaluation process.  20 C.F.R. § 404.1520(a)(1).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity.  *See id.* § 404.1520(a)(4)(i).  If the claimant is not, the ALJ at step two determines whether the claimant suffers from a medically severe impairment.  *See id.* § 404.1520(a)(4)(ii).  If the ALJ finds that the claimant does suffer a severe medical impairment, the ALJ at step three will determine whether claimants impairment gives rise to a presumption of disability by determining whether it meets or equals an impairment listed listed in appendix 1 of 20 C.F.R. § 404.1520.  *See id.* § 404.1520(a)(4)(iii).  If a match is found, the ALJ enters a finding of disability.  *See id*.  If, on the other hand, the claimant's severe medical impairment is not listed, the ALJ proceeds to step four to determine whether the claimant retains the residual functional capacity to perform past relevant work.  *See id.* § 404.1520(a)(4)(iv). Should the ALJ find that the claimant does in fact retain this residual functional capacity, the ALJ must at step four find that the claimant is not disabled.  *See id.*  However, if the claimant cannot perform past relevant work, the ALJ must proceed to step five and determine whether the claimant is capable of performing other work in the national economy.  *See id.* § 404.1520(a)(4)(v).

In denying Plaintiff's claim, the ALJ applied the five-step sequential process described above and found that: (1) Plaintiff has not engaged in substantial gainful activity since the

6

alleged onset of the disability; (2) Plaintiff's left eye blindness is a severe impairment, based upon the requirements in the Regulations (20 CFR § 404.1521); (3) the medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) Plaintiff is unable to perform any of his past relevant work; and (5) Plaintiff can perform jobs that exist in the national economy such as cleaner/janitor, laundry sorter, or packer.  Because this Court remands this matter to the ALJ for further consideration pursuant to Plaintiff's argument that the vocational expert's testimony adopted by the ALJ is inconsistent with the *Dictionary of Occupational Titles* (hereinafter "DOT"), this Court does not deem it necessary to engage in a discussion of Plaintiff's other arguments.[1]

The ALJ adopted the vocational expert's conclusion that Plaintiff could maintain a job as a cleaner/janitor, laundry sorter, or hand packer.  Defendant concedes that the position of janitor (1 DOT § 382.664-010) requires occasional climbing, and that the positions of laundry classifier[2] (1 DOT § 361.687-014)  and hand packager[3] (1 DOT § 920.587-018)  require some level of visual acuity.  U.S. Department of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* 133, 203, 316 (1993).  (Def's Br. at 9-11.)  As noted

---

[1] This Court notes that the ALJ's opinion does not reflect what probative value he assigned to the testimony of Plaintiff's wife.  The ALJ must consider and weigh all the non-medical evidence before him, including lay testimony.  *See Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000).

[2] The DOT lists no occupation named "laundry sorter."  *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002).  Nevertheless, Plaintiff's and Defendant's briefs both consider "laundry sorter" equivalent to "laundry classifier."  (Pl's Br. at 11; Def's Br. at 10.)  Thus, this Court's analysis proceeds from that same basis.

[3] Similarly, the DOT does not contain a job listing of a "packer."  *Burns*, 312 F.3d at 128. This Court concludes from the vocational expert's reference to "simple packing jobs where you would stand and pack items as they are brought to you" (Tr. at 49), he intended to refer to the occupation of "hand packager" and not, as Plaintiff apparently assumes, to a packer in the tobacco industry.  (Pl's Br. at 11, citing 1 DOT § 920.687-130.)

above, the ALJ concluded that Plaintiff's residual functional capacity precluded work requiring climbing steps or visual acuity. (Tr. at 17, 19.) Thus, these occupational listings are inconsistent with the Plaintiff's residual functional capacity. *Id.*

When vocational evidence provided by a vocational expert is not consistent with information in the DOT, the ALJ must resolve this conflict before relying on the vocational expert to support a determination that the individual is or is not disabled, and the ALJ must explain in the decision how the conflict was resolved. Social Security Ruling 00-4p; *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002). Although the ALJ properly asked the vocational expert whether his testimony comported with the DOT and received an affirmative answer (Tr. at 50), this answer was apparently erroneous, as each position entails a nonexertional requirement that Plaintiff cannot meet. Thus, on remand, the ALJ should explain and resolve the conflict between the vocational expert's testimony and the DOT.

## V.   CONCLUSION

For the foregoing reasons, this Court finds that ALJ Pace's analysis under step five was inadequate. Therefore, this matter is **REMANDED** to the ALJ to resolve the apparent conflict between the vocational expert's testimony and the DOT.


**Dated:** 8/15/05

/s/William J. Martini
_____
**William J. Martini, U.S.D.J.**

8